# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

CHARLES F. WARMAN,

                Petitioner,      :      Case No. 2:18-cv-564

    - vs -                             District Judge Algenon L. Marbley
                                      Magistrate Judge Michael R. Merz

TIM BUCHANAN, Warden,
  Noble Correctional Institution

                                  :

                Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Charles F. Warman, is before the Court on Petitioner's Objections (ECF No. 18) to the Magistrate Judge's Report and Recommendations recommending dismissal (the "Report," ECF No. 15). Judge Marbley has recommitted the case for reconsideration in light of the Objections (ECF No. 19).

**The Report**

Warman pleaded four grounds for relief in his Petition:

1. Ineffective assistance of trial counsel for failure to impeach the victim with perjured testimony.

2. Prosecutorial misconduct for knowing use of false testimony.

3. Ineffective assistance of appellate counsel "by not challenging the appellate court's improper adjudication regarding petitioner's sixth assignment of error."

4. Ineffective assistance of trial counsel for failure to object to repeated hearsay testimony by Officer Purtee.

The Report concluded Grounds One and Two were procedurally defaulted because they were not raised on either direct appeal or in a post-conviction petition (Report, ECF No. 15, PageID 830-41). Ground Three was found to be without merit. *Id.* at PageID 841-42. On Ground Four the Report recommended deferring to the state court of appeals decision that failure to raise a meritless hearsay objection was not ineffective assistance of trial counsel.

**The Objections**

Warman states he objects to two determinations in the Report:

1. That it was not proven that any of the evidence presented by the prosecutor was known to be false (ECF No. 18, PageID 853, citing "R. 839" which the Magistrate Judge takes to be PageID 839[1]).

2. That trial counsel's failure to impeach victim Felicia Warman's inconsistent and false testimony concerning Fairbanks Avenue was not specifically addressed, and that counsel's failure did not constitute an ineffective assistance of counsel. *Id.*, citing PageID 839.

Warman combines his argument on these two Objections because he says they are intertwined. *Id.*

Warman first claims that "Court's [sic] review challenges of prosecutorial misconduct *de novo*. All the relevant material was supplied to the Court for a *de novo* determination that the

---

[1] Magistrate Judge Jolson's Order for answer (ECF No. 3) advises the parties that the Court's CM/ECF filing system affixes a unique PageID number to each filed page and then requires parties to reference the record in that way. Petitioner has complied but used a different method of referring to the PageID number.

prosecutor knowingly used false testimony to secure a conviction against Warman." (ECF No. 18, PageID 853.) Warman offers no authority for this proposition and none is known to the Magistrate Judge.

Use by a prosecutor of testimony known to be false is a well-recognized violation of the Due Process Clause. The Report stated the relevant law:

> [T]he "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972). Presentation of testimony known to be perjured violates a defendant's due process rights. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman*, 178 F.3d at 766, citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), citing *Rosenkrantz v. Lafler,* 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee,* 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; Byrd v. Collins, 209 F.3d 486, 517 (6th Cir 2000). Mere inconsistencies in the testimony will not suffice. *Monea v. United States,* 914 F.3d 414 (6th Cir. 2019)(Nalbandian, J.), citing *Lochmondy*.

ECF No. 15, PageID 840. Although this claim deals with well-developed law, that law does not allow a habeas court to review de novo a claim of prosecutorial misconduct which has been procedurally defaulted in the state courts. Warman cites case law that provides that a *pro se* litigant's pleading are to be liberally construed (Objections, ECF No. 18, PageID 854), but liberal construction does not imply waiver of procedural default. The balance of the Objections argues the merits of Warman's knowing use of false testimony claim, and nowhere attempts to excuse the procedural defaults of this claim found in the Report (Objections, ECF No. 18, PageID 854-61).

The conflict in the evidence that Warman relies on is between Officer Purtee's testimony about what the victim told him when he arrived on the scene and what she later testified to at trial.

Patrolman John Purtee testified he is employed at the Newark, Ohio, Police Department (State Court Record, ECF No. 9-1, PageID 543). On November 21, 2015, he was dispatched on a domestic violence call to 1006 Fairbanks Drive in Newark. *Id.* at PageID 545. Arriving, he "found Ms. Warman hiding behind the back of a pickup truck in the street." *Id.* at PageID 546. She told him her husband Charles was after her and they had had a fight. *Id.* After trying unsuccessfully to find Charles, he returned to her in the back seat of his cruiser. She immediately told him that she had been beaten with a large stick used to mix drywall mud. *Id.* at PageID 548. The interrogation of her by Petitioner was over a sexual act she was accused of performing on "Jake." "She said eventually that she just told Charles she did it so that the abuse would stop. She and Charles then drove to the Fairbanks Avenue address where she was found in order to confront Jake. Charles yelled for Jake to come out then chased Felicia around the car three or four times, which is when the police arrived. Officer Purtee drove her back to her residence on Lawrence Street which is where the abuse occurred. He then identified photographs that showed her injuries from being struck with the drywall tool. *Id.* at PageID 552.

Felicia Warman testified she had known Petitioner since the second grade, but they became more than just friends in November 2014, she moved into his residence on Lawrence Street in February 2015, and they married in August 2015. (ECF No. 9-1, PageID 563.) He was jealous and began hitting her around October 2015. When people at work would comment on her injuries, she would say that she "fell or got hurt." She didn't tell anyone that her husband was hitting her because "it's embarrassing." *Id.* at PageID 565. She recounted that her husband made her quit working at Home Depot and then was hitting her every day, accusing her of cheating on him.

Finally, she went to the hospital in early November. *Id*. at PageID 568. She identified pictures of the injuries he inflicted on her that were taken at the hospital. *Id*. at PageID 571 *et seq*. She went to a domestic violence shelter until Charles talked her into coming home. *Id.* at PageID 576. She stayed there "until he beat me the second day out on Fairbanks Avenue and the police took me back home and I packed my stuff to leave again." *Id.* at PageID 576-77.

When she and Charles drove to Jake's house to confront him about the alleged cheating, "he was smacking me and punching me and pulling my hair and hitting me the whole way we were heading there." (ECF No. 9-1, PageID 578.) When they got there, apparently Charles told Jake that Felicia admitted engaging in sex with Jake. This made Jake angry and he and Charles both yelled at Felicia to get out of the car. Charles was swinging the mud paddle[2] "telling me he was going to beat me with it." *Id.* at PageID 579. She then identified photographs of the injuries Petitioner inflicted on her on November 21. *Id*. at PageID 580-81.

Upon cross-examination, Ms. Warman admitted lying about a number of things, but explained it was because she was being beaten.

Warman's entire "use of perjured testimony" argument hinges on the inconsistency between Purtee's testimony that Felicia testified she was only threatened on Fairbanks Avenue and Felicia's comment about him beating her that second day out on Fairbanks. The testimony seems fairly clear to the Magistrate Judge that Charles was threatening to hit her with the mud paddle on Fairbanks, but not that he actually struck her with it there. This is in the context of her testimony that he was assaulting her in the car all the way over to Fairbanks and that he had beaten her, leaving patent injuries visible to other people and photographed, during the course of their marriage. The inconsistency was pointed out in defense counsel's cross-examination of Purtee, so

---

[2] "Mud" is a colloquial term for drywall spackle.

5

the jury clearly knew of the inconsistency. Defense counsel also vigorously cross-examined Ms. Warman about her lying to the police and to others. Thus the jury could clearly evaluate those inconsistencies and admitted lying in the context of seeing photographs of her injuries.

It does not constitute knowing use of perjured testimony to have two witnesses give testimony that is inconsistent in some details. Plainly, something about the marital disputes between Charles and Felicia happened on Fairbanks Avenue, after he got her there while assaulting her along the way. Whether he actually struck her again with the mud paddle on Fairbanks or only came very close to doing it is not a material inconsistency in the context of the testimony that was given.

Warman's argument fails to show that Felicia's testimony about being beaten on Fairbanks was false; he has only shown that it was inconsistent with what she told Officer Purtee on the scene. Moreover, the inconsistency is immaterial in that it is not likely to have affected the jury's judgment.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 17, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).